**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, LOCAL 611,

       Plaintiff/Cross-Defendant,

v.                                 No. 18-CV-865-WJ-JHR

PUBLIC SERVICE COMPANY
OF NEW MEXICO,

       Defendant/Cross-Claimant.

**<u>MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF/CROSS-DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (Doc. 21) AND
DENYING DEFENDANT/CROSS CLAIMANT'S PNM'S MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM BRIEF IN SUPPORT OF PNM'S CROSS-
PETITION TO SET ASIDE OR VACATE ARBITRATION AWARD AND IN
OPPOSITION TO THE UNION'S PETITION TO ENFORCE ARBITRATION AWARD
(Doc. 22)</u>**

**THIS MATTER** comes before the Court on Plaintiff/Cross-Defendant's Motion for Summary Judgment, [**Doc. 21, filed January 31, 2019**], and Defendant/Cross Claimant's PNM's Motion for Summary Judgment and Memorandum Brief in Support of PNM's Cross-Petition to Set Aside or Vacate Arbitration Award and in Opposition to the Union's Petition to Enforce Arbitration Award. [**Doc. 22, filed January 31, 2019**]. Upon reviewing the parties' pleadings and the applicable law, the Court has decided to **GRANT** Plaintiff's motion and to **DENY** Defendant's motion.

## BACKGROUND[1]

### I.      Agreement between Plaintiff and Defendant

The following facts are undisputed. The International Brotherhood of Electrical Workers ("Plaintiff") and the Public Service Company of New Mexico ("Defendant") entered into a collective bargaining agreement for the period of December 5, 2015 to April 30, 2020 ("2015 Agreement"). [Doc. 21 at 3; Doc. 22 at 3]. A prior collective bargaining agreement was effective from July 7, 2012 to April 30, 2015 ("2012 Agreement"). [Doc. 22 at 2]. The 2015 Agreement applies to employees in the Company's Electric, Water, Transmission, Distribution, Production, Meter Reader, and Collector departments in divisions and jobs referenced in that agreement.

The 2015 Agreement stated that all prior agreements not included in the collective bargaining agreement were held to be null and void except for mutual agreements listed in Article 38 and policies listed in Article 47 and Addendums to the collective bargaining agreement. [Doc. 20].

Article 38 provides that any other prior agreements between the parties are null and void. Article 38 states:

### ARTICLE 38-MUTUAL AGREEMENTS

Mutual agreements shall be made in writing, ratified by the affected members in the appropriate unit and signed by the Business Manager of the Union or his assistant, and a Vice President of the Company.

All mutual agreements, "For the Record Statements", memorandums of understanding, and any other agreements between the parties not contained in this collective bargaining agreement shall be considered null and void upon the effective date of this contract, with the sole specific exceptions of those listed in the Addendums to the contract and the following:

- Afton 12 hour shift schedule – GPT/MOPS, July, 2018
- SJGS Operations Restructure, January 2012

---

[1] The factual background is partially based on the "Background" section in the Arbitrator's Decision and Award. [Doc. 1.6].

- ESBU Accretion agreement, December 1, 2007
- ESBU Use of IBEW Contractors, May 2006
- ESBU Trouble Order Dispatcher and Sr. Trouble Order Dispatcher combined overtime log, December, 2000
- ESBU – Substation Department out of town assignments, June 19, 2012
- ESBU – Southern Division Groundman Lineman wage rage adjustment, July 2012
- Southern New Mexico Line Locating, December 5, 2015

. . . .

[Doc. 20] (bold in original). Article 47 incorporated certain other documents by reference. Article

47 states:

## ARTICLE 47-INCORPORATION BY REFERENCE

The following policies, and no others, are hereby incorporated as written, into the Agreement as of July 7, 2012:

1. HR Policy 123 (Positive Discipline).
2. HR Policy 404 (Drug & Alcohol Testing).
3. Job Descriptions/classifications.*

*The Company must have, and provide, reasonable and legitimate business justification for any jobs created, or any existing jobs permanently and substantially changed. The Company will supply this information to the Union in writing upon notification to it of the Company's proposal(s) to create or change jobs. The parties agree to honor their good-faith bargaining obligations regarding the creation or modificiation of job classifications and their attendant job descriptions. They will meet diligently and without delay to negotiate any new or changed job. The Union reserves the right to address disputes not covered under the provisions of this article as provided in Article 10 and 11 of the contract.

. . .

[Doc. 20] (bold in original).

On September 22, 2017, Plaintiff filed a charge against Defendant with the National Labor

Relations Board ("NLRB"). The NLRB dismissed the charge. The charge was dismissed as

untimely. Plaintiff then decided to take the matter to arbitration.

During arbitration, at issue was the collective bargaining agreement between Plaintiff and

Defendant referred to as the "preface" or "administrative section" of the Job Description Manual.

This preface is an agreement negotiated and agreed to in or around 1986 by both parties. [Doc. 20.9]. Plaintiff argued at arbitration that the preface was eliminated by the plain language of Article 38, while Defendant argued that the preface was incorporated by reference by the plain language of Article 47.

An arbitration hearing was held. Both parties presented exhibits and witnesses in support of their respective interpretations of the 2015 Agreement.

## II.    Arbitrator's Decision

The question before the arbitrator was whether the preface was eliminated by Article 38 of the 2015 Agreement. [Doc. 20.19]. After reviewing the 2015 Agreement, the documentary evidence and the testimony of the witnesses, the arbitrator determined that the preface was made null and void as of July 7, 2012 based on the language of Article 38. [Id.] Plaintiff filed a petition to enforce the arbitration award and Defendant responded by filing a counter-petition to vacate the arbitration award and both parties filed motions for summary judgment in support of their petitions.

## STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248–50. An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the

nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Systems, Inc.,* 726 F.3d 1136, 1143-44 (10th Cir. 2013).

The party opposing summary judgment cannot rest on the pleadings but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The non-movant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores*, Inc., 144 F.3d, 664, 671 (10th Cir. 1998) (internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it[.]" *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008). The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine", the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.*

In analyzing cross-motions for summary judgment, a court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016). "Cross motions for summary judgment are to be treated separately; the denial of one

does not require the grant of another." Chr*istian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

## DISCUSSION

### I.    Arbitration Awards Under the Federal Arbitration Act

The Federal Arbitration Act ("FAA" or "the Act"), establishes "a national policy favoring arbitration of claims that parties contract to settle in that manner," and "provides that arbitration agreements in contracts 'involving commerce' are 'valid, irrevocable, and enforceable.'" *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (quoting 9 U.S.C. § 2).

Section 10 of the FAA provides:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

   (1)  Where the award was procured by corruption, fraud, or undue means;

   (2)  Where there was evident partiality or corruption in the arbitrators, or either of them;

   (3)  Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

   (4)  Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

Section 11 of the FAA provides:

In either of the following cases the United States Court . . . wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

> (a) Where there was an evidence material miscalculation of figures or an evidence material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.

As set forth above, the Act "supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). However, the Act significantly limits the Court's discretion when confronted with such an award, requiring that the court "'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Id.*

"The courts are not authorized to reconsider the merits of an award *even though* the parties may allege that the award rests on *errors of fact* or on *misinterpretation of the contract.* The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." *Local No. 7 United Food and Commercial Workers Int'l Union, Inc. v. King Soopers, Inc.*, 222 F.3d 1223, 1226 (10th Cir. 2000) (citing *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29 (1987)) (internal quotations and citation omitted) (emphasis added).

These enumerated statutory grounds (9 U.S.C. §§ 10-11) are exclusive, with the exception of the judicially-created "manifest disregard" standard. *See Abbott v. Law Office of Patrick J. Mulligan*, 440 F. App'x 612, 618-19 (10th Cir. 2011) (explaining the circuit split regarding the

7

"manifest disregard" theory and refusing to "jettison[]" the "manifest disregard" standard in the absence of clear guidance from the Supreme Court indicating that it is not encompassed in the grounds enumerated in § 10). Unless the award is vacated, modified or corrected as prescribed by 9 U.S.C. §§ 10-11, "the court must grant such an order" confirming the arbitration award. *See* 9 U.S.C § 9.

For these purposes, "manifest disregard" requires "more than error or misunderstanding with respect to the law." *Cessna*, 943 F. Supp. 2d at 1196 (internal quotation marks omitted). *See also ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) ("This Court has characterized the manifest disregard standard as willful inattentiveness to the governing law" and "[m]anifest disregard of the law clearly means more than error or misunderstanding with respect to the law.") (internal quotation marks omitted). Accordingly, for this Court to vacate an arbitration award on these grounds, the Court must find that the arbitrator "*knew the law and explicitly disregarded it.*" *DMA Int'l*, 585 F.3d at 1344 (internal quotation omitted) (emphasis added).

"Notably, the manifest disregard standard applies only to conclusions of law, not to the arbitrators' factual findings, *which are beyond review.*" *Hosier*, 835 F. Supp. 2d at 1102 (citing *Kennecott Utah Copper Corp. v. Becker*, 195 F.3d 1201, 1204 (10th Cir.1999)) (emphasis added).

## II.   Arbitration Award

### a.   Whether Award Draws its Essence from the Collective Bargaining Agreement

Defendant suggests three arguments that have no bearing on the resolution of the case:[2]

---

[2] The Court does not address these arguments by Defendant as there is plenty of arbitration-award case law to guide the Court on the resolution of this issue. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623, 200 L. Ed. 2d 889 (2018) ("The law of precedent teaches that like cases should generally be treated alike[.]"). Moreover, Defendant raises new arguments in its reply brief. [Doc. 29]. Normally "[c]ourts are reluctant to consider evidence raised only in a reply brief," *MusclePharm Corp. v. Liberty Ins. Underwriters, Inc.*, 712 F. App'x 745, 758 (10th Cir. 2017), because doing so "leav[es] the opposing party no opportunity to challenge its validity or relevance." *W. Coast Life Ins. Co. v. Hoar*, 558 F.3d 1151, 1157 (10th Cir. 2009). The Court will not address these new arguments.

(1) The arbitrator exceeded his authority and his jurisdiction, and manifestly disregarded clearly-established federal labor law when he required Defendant to provide the terms of the agreement to individual employees;

(2) The arbitrator exceeded his authority when he altered and eliminated language from the job descriptions, as written;

(3) The arbitrator manifestly disregarded clearly established federal labor law and allowed Plaintiff to obtain in arbitration what it was unable to obtain through negotiation.

The crucial issue before the Court regarding the arbitration award is far simpler than those suggested by Defendant: whether the arbitration award draws its essence from the collective bargaining agreement.

An arbitration award does not "draw its essence" from the collective bargaining agreement if:

> It is contrary to the express language of the contract or is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator or if viewed in the light of its language, its context, and any other indicia of the parties' intention, it is without factual support.

*LB&B Associates, Inc. v. International Broth. of Electrical Workers, Local No. 113*, 461 F.3d 1195, 1197-98 (10th Cir. 2006) (citation omitted).

Defendant has not cited evidence indicating that the arbitrator's decision is contrary to the language of the contract or to the law, and that the award is "so unconnected with the working purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator" or is "without factual support." *Id.* In fact, the arbitrator based his determination on an interpretation of the plain language of Articles 38 and 47. The arbitrator noted that none of the enumerated items referred to the preface, and as a result, the preface was eliminated by the 2015 Agreement.

Defendant suggests that this Court analyze the contract and evidence presented at arbitration. Even if the Court disagreed with the arbitrator's finding, or the interpretation given to the contract by the arbitrator, the Court cannot review these findings. As previously noted, the arbitrator's factual findings are beyond review. *Hosier*, 835 F. Supp. 2d at 1102. Further, "so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling [the arbitrator] because their interpretation of the contract" differs. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). "Whether it is the best interpretation is irrelevant; the arbitrator at least 'arguably constru[ed]' the [collective bargaining agreement], *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 38 (1987), thus, his decision must stand." *LB & B Assocs., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 113*, 461 F.3d 1195, 1198 (10th Cir. 2006). Accordingly, the Court finds that the arbitrator's decision draws its essence from the collective bargaining agreement.

### III.    National Labor Relations Board Decision

Defendant argues in its motion that the arbitrator's award manifestly disregarded the law because Plaintiff's grievance with the NLRB was filed outside of the time allowed to bring a claim pursuant to the collective bargaining agreement and the National Labor Relations Act ("NLRA") Section 10(b).

While the NLRB has primary jurisdiction to decide what constitutes unfair labor practices under the NLRA, *see Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83 (1982), it is not the exclusive tribunal for the adjudication of labor disputes, particularly those involving interpretation of a collective bargaining agreement. *See Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 202 (1991). Arbitration is a proper method for resolving disputes under a collective bargaining agreement even if the same set of facts could relate to an unfair labor practice charge. *See Carey v. Westinghouse*

*Electric Corp.*, 375 U.S. 261, 272 (1964). Federal courts have jurisdiction over arbitration enforcement suits under such circumstances. *See General Warehousemen and Helpers Local 767 v. Standard Brands, Inc.,* 579 F.2d 1282, 1289 (5th Cir.1978) (en banc), *cert. dismissed,* 441 U.S. 957 (1979).

If the NLRB's decision ultimately conflicts with the arbitrator's award, the NLRB's decision will govern. *See Carey,* 375 U.S. at 272. That possibility does not prevent the Court from evaluating the enforcement of the award in the meantime. *United Food & Commercial Workers Union AFL-CIO v. Pilgrim's Pride Corp.*, 193 F.3d 328, 331–32 (5th Cir. 1999). The Court reviews the arbitration award for conformity with the collective bargaining agreement and with national labor policy as it is currently established. *See id.* The Court's review is not contingent on the NLRB's decision in this case. *See id.*

The NLRB dismissed Plaintiff's grievance pursuant to NLRA Section 10(b). (Section 10(b) states in part: "[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board . . . ."). Defendant argues that NLRB decisions take precedent over arbitration decisions. [Doc. 22 (citing *Carey*, 375 U.S. at 272]. However, Defendant failed to present this issue to the arbitrator. Plaintiff's NLRB charge and the NLRB's decision were admitted into evidence at the arbitration, however, Defendant only presented the following issue in its brief to the arbitrator: "Was the [collective bargaining agreement] violated when [Defendant] continued to rely upon the language of the Administrative Section of the Job Description Manual, which the parties negotiated and agreed to over 30 years ago, which is incorporated by reference into the [collective bargaining agreement], and which is contained in every job description?" [Doc. 1.5 at 2].

11

Nowhere in its twenty-seven-page brief to the arbitrator did Defendant mention the NLRB decision or the timeliness issue. *See United Steelworkers of America v. Smoke-Craft, Inc.,* 652 F.2d 1356, 1360 (9th Cir.1981) (failure to raise certain claims before arbitrator waives them in confirmation proceeding), *cert. denied,* 455 U.S. 1021 (1982); *Cook Industries, Inc. v. C. Itoh & Co.,* 449 F.2d 106, 107–08 (2d Cir.1971) (failure to object to arbitrator's bias in arbitration proceeding waives the objection on appeal), *cert. denied,* 405 U.S. 921 (1972); *Washington-Baltimore Newspaper Guild v. Washington Post Co.,* 367 F.Supp. 917, 919 (D.D.C.1973) (failure to raise defense of set-off before arbitrator bars employer from asserting it to resist enforcement); *Automobile Mechanics, Local 701 v. Holiday Oldsmobile,* 356 F.Supp. 1325, 1328 (N.D.Ill.1972) (failure to raise issue of oral agreement between parties before arbitrator waives argument in enforcement proceeding). Therefore, Defendant waived its objection and the Court cannot determine the issue as it was not part of the arbitration.

## IV.    Plaintiff's Petition to Confirm Arbitration Award

Based on the Court's denial of Defendant's petition to set aside or vacate the arbitration award, the arbitration award should be enforced. Unless the award is vacated, modified or corrected as prescribed by 9 U.S.C. §§ 10-11, "the court must grant such an order" confirming the arbitration award. *See* 9 U.S.C § 9. Therefore, Plaintiff's petition to enforce the arbitration award is granted and Defendant is ordered to comply with the arbitration award.

## V.    Attorney's Fees

Plaintiff has requested an award of reasonable attorney's fees. [Doc. 1 at 5].  This Court's Local Rules state:

> A motion for attorney's fees [. . .] must be filed and served within thirty (30) days after entry of judgment. Failure to file and serve within this time constitutes waiver of a claim to attorney's fees. Movant must submit a supporting brief and evidence (affidavits and time records). The motion must comply with D.N.M.LR-Civ. 7.

D.N.M.LR-Civ. 54.5. The Court will not award attorney's fees at this time as Plaintiff has not made the application pursuant to Local Rule 54.5 and judgment was not entered when Plaintiff requested attorney's fees.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Public Service Company of New Mexico's Motion for Summary Judgment and Memorandum Brief in Support of PNM's Cross-Petition to Set Aside or Vacate Arbitration Award and in Opposition to the Union's Petition to Enforce Arbitration Award, [Doc. 22], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff International Brotherhood of Electrical Workers, Local 611's Motion for Summary Judgment, [Doc. 21], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorney's fees is **DEFERRED** until, and if, Plaintiff files a supporting brief and evidence pursuant to Local Rule 54.5 within thirty (30) days of entry of judgment.

**IT IS FINALLY ORDERED** that the parties are ordered to comply with the arbitrator's decision and award.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE